Sash, C. J.
 

 By the 1th section of an act of the General Assembly, passed in the year 1850, it is enacted, that “whereas many poor persons, being destitute of homes, have (also) settled upon the unsurveyed lands in the County of Cherokee, &c., all persons who, prior to the first of January, 1851, resided on said lands, or had made any improvements thereon, wdiich add value to the land, shall he entitled to a pre-emption privilege to one hundred acres, to include their improvements, &c., and upon making satisfactory proof to the agent of the Cherokee lands, that he or she is entitled to the preemption privilege, within the meaning of this section of the act, it shall he his duty to issue a certificate to such person claiming the pre-emption privilege, setting forth the location of the hundred acres claimed; and upon such certificate, it shall he competent for the persons entitled to the pre-emption privilege, to have the said lands surveyed, at his or her own expense, &c., to include his or her improvements, &c., and upon payment being made to the agent of Cherokee lands of one-fourth of the price of the land, and upon entering into bonds, with two or more sureties, to he approved by the agent, payable to the State in three annual instalments, for the remaining three-fourths, to issue, to the said purchasers, certificates of the purchase, setting forth the number of the tract, the district in which situated, the number of acres and the price sold for.” Under this act, the plaintiff alleges he was entitled to a pre-emption right to the land set forth in his bill, and duly
 
 *200
 
 obtained a certificate from Jacob Siler, who was the agent of the State for Cherokee lands, which in all things pursued the requirements of the 7th section of the act of 1850-51, and under it had the one hundred acre tract surveyed, on the waters of Long-Bullet creek, in district Ho. 2, including his improvements, and made return thereof to the office of the Secretary of State. The land as described by the surveyor, in his survey, is as follows:
 
 “
 
 Beginning on a small hickory on the State line, and runs north one hundred poles to a small hickory in a rich hollow, thence east one hundred and sixty poles to a black oak on the line of John Wood’s land, thence south with said line to a stake on the State line, thence west with the State line to the beginning, containing one hundred acres; the whole of the purchase money amounting to $20 was paid. The bill charges that, at the time the plaintiff obtained from the agent of the State, Jacob Siler, his pre-emption certificate, that the defendant John Wood was present and opposed its being granted, and that the defendant subsequently obtained 1‘rom the said State agent, liberty to take up and locate a hundred acres of land, to be located near to and adjoining the improvements of the plaintiff, and that the defendant fraudulently procured a survey to be made under his certificate, including the improvement of the plaintiff and has procured a grant for the same. The defendant, Woods, took possession, and the plaintiff brought an action of ejectment against him and failed, the legal title being in said Wood. The bill prays that the defendant may be decreed to convey the land to the plaintiff and for an account. The act further ■ authorises the purchaser of a pre-emption right to bring an action of ejectment to eject those settling on the land.
 

 To.this bill the defendant has filed a demurrer, in which several causes of demurrer are assigned. The first is, that the price of the land at twenty cents an acre, is only twenty dollars, a sum, which by the rules of this Court, the Court will not take jurisdiction of.
 

 The answer is, the rule is confined to a money demand and
 
 *201
 
 the bill is not brought to recover money, but the land itself, and for an account of rents and profits.
 

 The second cause of demurrer is, that, by the act referred to, occupants alone are entitled to pre-emption rights, and that the bill alleges that the plaintiff had purchased from one "William Shuford, his improvement. There is nothing in the act of 1851 which forbids an individual, who settled down on the Cherokee lands and made an improvement thereon, from transferring to another person, for a sufficient consideration, his rights arising under his occupancy, and of transferring that occupancy itself to his assignee. Erom the statement'of the bill, we are authorised to presume that the plaintiff took possession of the improvement made by Shuford, and was, therefore, literally an occupant. The object of the act was to induce persons to occupy and settle those refuse lands, by securing to those hardy pioneers who went upon it and actually made an improvement on it, the fruits of their labor. Whether therefore the pre-emption right ■was granted to Shuford or to the plaintiff, the object of the act was equally obtained.
 

 But again, it may wmll bo taken, that the law has made the State’s agent of tire Cherokee lands, the judge in deciding whether an applicant has brought himself within the provisions of the act, and the defendant did appear before Mr. Siler and contested the right of the plaintiff and we have no doubt, upon the ground stated in the demurrer, upon the above point; however we express no opinion.
 

 The third ground of demurrer cannot be sustained. The bill is not multifarious. The allegation that the defendant’s grant was obtained in fraud of the act of 1851 is only the assignment of an additional cause why that grant should not be suffered to be in the way of plaintiff, in procuring a good legal title to his pre-emption right. A bill is multifarious where it combines distinct claims against the same defendant, or where it unites in the same suit, several defendants, some of whom are unconnected with a great portion of the claim. Multifariousness of the first kind, sometimes called a misjoin-der of claims, is
 
 where the plaintiff has several distmet claims
 
 
 *202
 
 against the same defendant, and prays relief in a single hill in respect of all. But the rule being one of convenience only, is not absolutely binding, and may be dispensed with, if the claims be so far connected that a single suit is more convenient, Adams’ Eq. 309-’10. Here the plaintiff has no
 
 claim
 
 upon the defendant, for his violation of the law in surveying his land fraudulently. That is a claim belonging to the State, and which, as before remarked, is only suggested that it may be removed out of his way, and a decree procured in his favor upon the main point, which is his laying his grant upon land to which he knew the plaintiff was equitably entitled.
 

 It was further alleged on the hearing that, under the act, the plaintiff had a clear right to sue at law. The act, in giving this right, was intended to operate against mere occupants without title; here the defendant has the legal title, see
 
 Benzien
 
 v. Lenoir, 1 Car. L. Rep. 504.
 

 Peb Cueiam. The demurrer is over-ruled at the cost of the defendant.